UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

| | |
|---|---|
| ERNESTO GONZALEZ, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | CASE NO. 1:21-CV-21519-FAM |
| § | |
| TENANT TRACKER, INC., § | |
| § | |
| *Defendant.* § | |
| § | |

**Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant TENANT TRACKER, INC. ("TTI"), by and through its undersigned counsel, and files its Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure as follows:

I.   Introduction

Plaintiff Ernesto Gonzalez ("Plaintiff") brings suit against TTI alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"). Doc. 1. However, Plaintiff improperly brings this action in a court that does not have jurisdiction over TTI. TTI has not purposefully availed itself of the benefits of the State of Florida, and any limited or irregular contact TTI may have with Florida is unrelated to Plaintiff's claims. Further, it would be unreasonable to

assume jurisdiction over TTI. Consequently, Plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

## II.   Relevant Facts

1. TTI is a nonresident of the State of Florida and has no purposeful contacts with the State of Florida.
2. TTI is a Texas corporation which maintains its principal place of business in McKinney, Texas. Exhibit A ¶ 3. TTI only has three (3) employees. *Id.* ¶ 16.
3. TTI does not have, nor has it ever had, an office in the State of Florida. *Id.* ¶ 5.
4. TTI does not own or lease, nor has it ever owned or leased, any business real property or business personal property in Florida. *Id.*
5. TTI has no employees in Florida, maintains no company files in Florida, and has conducted no company meetings in Florida. *Id.*
6. TTI is neither registered nor licensed to do business in Florida and has no agent for service of process in Florida. *Id.*
7. Any business TTI may conduct in Florida is significantly limited and not related in any way to Plaintiff's claims. *Id.*
8. TTI generates less than one percent (1%) of its annual revenue from business in Florida. *Id.*
9. TTI does not pay taxes or maintain a bank account in Florida. *Id.* ¶ 6.
10. TTI does not engage in print, television, or radio advertising in Florida and does not engage in any other marketing activities in Florida targeting Florida

consumers. *Id*. ¶ 7. TTI does not engage in any advertising or marketing outside Florida which is directed to Florida consumers. *Id.*

11. TTI maintains no Internet presence which solicits business from Florida consumers or otherwise engages in Internet-based commerce in Florida. *Id.* ¶ 8.

12. TTI does not have an interactive or a passive home page on the Internet accessible by consumers. *Id.*

13. TTI has never initiated or received any telephone calls or electronic mail communications to or from the Plaintiff. *Id.* ¶ 13.

14. All communications by Defendant with Plaintiff in Florida were in response to written inquiries initiated by the Plaintiff and were informational only. *Id.* ¶ 13. TTI sent a letter dated December 8, 2020. Exhibit D.

15. This communication was not an attempt to collect a debt. Exhibit A ¶ 13.

16. TTI's records indicate that Plaintiff initiated communication between Plaintiff and TTI a dispute letter to TTI and Consumer Dispute Verifications ("CDV") sent through the credit bureaus to TTI. Exhibit A ¶ 13.

17. The CDV was received by TTI in Texas. *Id*. The December 8, 2020 letter was a response to Plaintiff's dispute and only reported the results of TTI's investigation. *See* Exhibit D.

18. TTI initially reported this debt to the credit bureaus on September 14, 2018 *Id.* ¶ 14.

19. Any reports were generated and completed in Texas. *Id*. T

20. he indebtedness forming the basis for the underlying collection activities exclusively arose out of an apartment lease in Odessa, Texas which the landlord alleged was breached by Plaintiff. *Id*.

21. In sum, approximately, three (3) years after Plaintiff's alleged breach of contract and the reports to the credit bureaus, Plaintiff moved to Florida and then disputed with credit reporting agencies and TTI. *Id*. ¶ 15.

22. TTI responded with the results of the investigation. *Id*.; Exhibit D.

### III. Legal Standard

Fed. R. Civ. P. 12(b)(2) allows for the dismissal of an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Under Rule 12(b)(2), a Plaintiff has the burden to show that personal jurisdiction exists as to each defendant. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988); *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). If a court determines personal jurisdiction over a defendant does not exist, then the defendant has "an unqualified right to have an order granting its motion to dismiss." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).

### IV. Argument

**1. There is a Lack of Personal Jurisdiction Under Florida Law.**

The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a state or federal long-arm statute and if the exercise of that jurisdiction does not violate federal due process. Fed. R. Civ. P. 4(k). "[T]he jurisdictional

analysis under the Florida long-arm statute and the jurisdictional analysis under the federal constitution are distinct." *Madara v. Hall*, 916 F.2d 1510, 1515 (11th Cir. 1990). Florida's long-arm statute is to be "strictly construed." *Sculptchair, Inc. v. Century Arts*, Ltd., 94 F.3d 623, 627 (11th Cir. 1996). Under Florida law, courts consider Florida's long-arm statute to determine whether personal jurisdiction exists under the statute's general or specific jurisdiction provisions. *Transglobal Airways Corp. v. JAF, LLC,* No. 06-22592-CIV-UNGARO, 2007 U.S. Dist. LEXIS 110274, at *28 (S.D. Fla. 2007). If statutory requirements are met, then courts apply the constitutional due process test to determine whether there are sufficient minimum contacts to satisfy due process. *Id.* at *26. District courts construe the long-arm statute as the Supreme Court of Florida would as the reach of the statute is a question of state law. *Oriental Imp. & Exp., Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890-91 (11th Cir. 1983).

Under Florida's long-arm statute, general jurisdiction exists "where the defendant's contacts with the state are not 'directly related to the cause of action being litigated,' but the Defendant engages in 'substantial and not isolated activity' in Florida." *Id.* at *28 (quoting *Stubbs*, 447 F.3d at 1361). Alternatively, specific jurisdiction exists where the alleged cause of action is related to defendant's activities in Florida if such activities fall under one of the enumerated acts in Fla. Stat. § 48.193(1). *Stubbs*, 447 F.3d at 1361.

    a. *There is No General Jurisdiction over TTI.*

Florida's long-arm statute allows for the exercise of general jurisdiction over a "defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2).

In the case at bar, there is clearly no basis to find general jurisdiction over TTI. "The language of the Florida long-arm statute explicitly requires 'substantial and not isolated activity within this state.'" *Aar Airlift Grp., Inc. v. Mansfield Heliflight, Inc.*, No. 6:12-CV-592-Orl-36TBS, 2012 U.S. Dist. LEXIS 194229, at *7 (M.D. Fla. 2012) (quoting Fla. Stat. § 48.193(2). TTI owns no property, has no employees, and directs no marketing to Florida. Exhibit A ¶¶ 5,7. It is a Texas corporation with a principal office in McKinney, Texas, and no offices elsewhere. *Id.* ¶ 3. Any business TTI may conduct in Florida is limited and generates less than one percent (1%) of its annual revenue from business in Florida. *Id.* ¶ 5. In fact, TTI's "business activity with this state is practically non-existent." *See Aar Airlift*, 2012 U.S. Dist. LEXIS 194229, at *7. It does not have "substantial and not isolated activity" in Florida, and thus is not subject to general jurisdiction under the long-arm statute.

    b. *There is No Specific Jurisdiction over TTI.*

Florida's long-arm statute also allows for the exercise of personal jurisdiction in an enumerated list of circumstances which give rise to specific jurisdiction. Fla. Stat. § 48.193(1). The only potentially relevant provision in this case grants Florida courts jurisdiction over claims arising from a person's "[o]perating, conducting,

engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." *Id*. at § 48.193(1)(a)(1). "In order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 106 F. Supp. 2d 1278, 1281 (S.D. Fla.1999). Courts consider factors such as "the presence and operation of an office in Florida..., the possession and maintenance of a license to do business in Florida..., the number of Florida clients served..., and the percentage of overall revenue gleaned from Florida clients." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005); *see also Aar Airlift*, 2012 U.S. Dist. LEXIS 194229 at *5 (finding a defendant did not conduct business in Florida when it did not have an office or employees in Florida, did not solicit business in Florida, and generated less than one percent of its annual revenue from Florida).

Here, TTI owns no property, has no employees, and directs no marketing to Florida. Exhibit A ¶¶ 5,7. TTI is neither registered or licensed to do business in Florida nor has an agent for service of process in Florida. *Id*. ¶ 5. TTI maintains no Internet presence which solicits business from Florida consumers or otherwise engages in Internet-based commerce in Florida. *Id*. ¶ 8. TTI does not pay taxes or maintain a bank account in Florida. *Id*. ¶ 6. TTI does not have an interactive or a passive home page on the Internet accessible by consumers. *Id*. ¶ 8. Any business TTI may conduct in Florida is limited and generates less than one percent (1%) of its

annual revenue from business in Florida. *Id.* ¶ 5. It is a Texas corporation with a principal office in McKinney, Texas, and no offices elsewhere. *Id.* at ¶ 3. Accordingly, TTI does not fall within the long-arm statute, and there is no personal jurisdiction.

**2.   There is a Lack of Personal Jurisdiction Under Federal Due Process.**

Further, even if the Florida long-arm statute applied, this case does not meet federal due process requirements for personal jurisdiction. Federal courts do not have jurisdiction over a nonresident unless the nonresident has purposefully established "minimum contacts" with the forum state and the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*; 444 U.S. 286, 291-91 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945). "The frequency of contacts is not determinative; the defendant's conduct must be such that he or she 'should reasonably anticipate being hauled into court there.'" *Burrell v. Duhon*, Civ. Action No. 5:18-cv-141-TBR-LLK, at *13 (W.D. Ken. Jun. 14, 2019) (quoting *Woodson*, 444 U.S. at 297). Personal jurisdiction may be based on either general or specific jurisdiction. *American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

   *a.   There is No General Jurisdiction over TTI.*

General jurisdiction exists when the defendants' contacts with the state are "substantial" or "continuous and systematic," and requires that a defendant's contacts approximate physical presence within the state. *Helicopteros Nacionales de*

*Colombia, S. A. v. Hall*, 466 U.S. 408, 415 (1984). General jurisdiction focuses on whether the defendant's affiliations are so continuous and systematic to render it essentially "at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Daimler AG v. Bauman*, 571 U.S. ___, 134 S.Ct. 746, 755 (2014).

Here, just as there was no basis for general jurisdiction under the Florida long-arm statute, there is no basis to find general jurisdiction under the due process analysis. TTI owns no property, has no employees, and directs no marketing to Florida. Exhibit A ¶¶ 5,7. It is a Texas corporation with a principal office in McKinney, Texas, and no offices elsewhere. *Id.* ¶ 3. Any business TTI may conduct in Florida is significantly limited. *Id.* ¶ 5. It does not have continuous and systematic contacts or relations with Florida. It cannot be sued here on any claims. Instead, specific jurisdiction would have to be established.

    b. *There is No Specific Jurisdiction over TTI.*

Specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation and quotation marks omitted). The Eleventh Circuit employs a two-part analysis to determine whether personal jurisdiction exists. *Madara*, 916 F.2d at 1515-16. Courts look first to whether the defendant has "minimum contacts" with Florida. *Id.* at 1516. Then, courts must

decide whether exercising personal jurisdiction over the defendant "would offend traditional notions of fair play and substantial justice." *Id*. (internal quotes omitted).

### i. The Minimum Contact Requirement is Not Met.

When a forum state seeks to assert jurisdiction over a nonresident, the defendant must have fair warning that he could be subject to such jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985). "This fair warning requirement is satisfied if the defendant has purposefully directed his activities at the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Madara*, 916 F.2d at 1516 (internal quotes and citations omitted). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Rather, jurisdiction is proper when the defendant's actions "create a 'substantial connection' with the forum state." *Burger King*, 471 U.S. at 475.

Here, TTI has not created a substantial connection with Florida or purposefully directed its activities to Florida. TTI does not have, nor has it ever had, an office in the State of Florida. Exhibit A ¶ 5. It has no property or employees in Florida, nor does it hold any meetings there. *Id*. Rather, TTI is incorporated and operates from its principal place of business in Texas. *Id*. ¶ 3. TTI does not market to Florida consumers and has no Internet presence soliciting business from Florida. *Id.* ¶ 7, 8. Any business TTI may conduct in Florida is significantly limited and constitutes less than one percent (1%) of TTI's annual revenue. *Id*. ¶ 5.

Plaintiff alleges that TTI failed to report a Trower Realtors account as disputed. Doc. 1. Trower Realtors is located in Odessa, Texas. Exhibit A ¶ 12; Trower Realtors, Inc., *Contact Information*, https://www.trowerrealtors.com/default.asp?content= contact&menu id=88325 (last visited June 15, 2021). Plaintiff sent disputes to TTI both directly and through the credit bureaus in November 2020. Exhibit A ¶ 13. The only connection TTI has to Florida is that it responded to Plaintiff's dispute with a letter sent to Plaintiff's Florida address. However, the fact that TTI responded to Plaintiff's demands by written communications delivered in Florida does not provide specific jurisdiction. TTI did not make a demand or take any action that would give rise to a claim under the FDCPA or Florida law. TTI merely reported the results of its investigation to Plaintiff. Exhibit D. Further, all of the credit reporting was completed in Texas. Exhibit A ¶ 14. Consequently, minimum contacts are not present in this case, and Plaintiff's claims should be dismissed for lack of personal jurisdiction.

    ii. The Assumption of Jurisdiction over TTI Would Offend Traditional Notions of Fair Play and Substantial Justice.

The second requirement for personal jurisdiction is that the connection to the forum state is substantial enough that assuming jurisdiction over the defendant "would comport with 'fair play and substantial justice.'" *Madara,* 916 F.2d at 1517 (citing *Burger King*, 471 U.S. at 476). Courts consider the following factors in determining whether this requirement is met:

> the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining

> convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies.

*Id*. "Minimum requirements of 'fair play and substantial justice' may defeat the reasonableness of asserting personal jurisdiction even if the defendant has purposefully engaged in forum activities." *Id*. (quoting *Burger King*, 471 U.S. at 477-78).

Here, TTI's interactions with the forum were minimal at best and were not initiated by TTI. Rather, the December 8, 2020 letter was responsive to Plaintiff's inquiry. *See* Exhibit A ¶ 13. TTI is not located in Florida and has no offices or employees in Florida. *Id*. ¶ 5. The burden on TTI to defend in Florida is significant. None of the records, files, or other underlying documentation of the Plaintiff's indebtedness to Trower Realtors are located in Florida. *Id*. ¶ 16. None of the potential witnesses with knowledge of the facts raised by Plaintiff's Complaint are in Florida. *Id*. The costs of transporting documents and witnesses to Florida, along with the associated lodging costs as well as the lost productivity arising from the witnesses' inability to perform their designated functions in Texas while absent from the office, to provide evidence for hearings or a trial will be many multiples of the damages claimed. *Id*. Additionally, Defendant will be required to retain counsel in Florida which is also an extraordinary expense which is also anticipated to exceed the amount of the damages claimed. *Id*. These cumulative costs are anticipated to exceed tens of thousands of dollars. *Id*.

Additionally, the interest of the forum state is minimal, at best. The actions underlying the claim all occurred in Texas and were precipitated by Plaintiff's breach of a Texas contract while he was living in Texas. Approximately three (3) years after Plaintiff's alleged breach of contract and the reports to the credit bureaus, Plaintiff moved to Florida and then disputed with credit reporting agencies and TTI. Exhibit A ¶ 15. TTI merely responded. *Id*. This Court should not have an interest in allowing jurisdiction to be focused on such remote and inconclusive contact.

Further, Texas as a forum would produce the most efficient forum and Plaintiff's interest in obtaining relief would still be properly addressed in a Texas forum. Because the files, witnesses, and transactions forming the underlying basis for the Plaintiff's claims are in Texas, the most efficient forum for judicial resolution is Texas. The witnesses to be called by TTI are its employees who handled the investigation of Plaintiff's dispute. TTI only has three (3) employees, and they are all located in Texas. *Id*. ¶ 16. TTI's records, including activity logs, are all located in Texas. The claim originated in Texas based on the Plaintiff's breach of an apartment lease in Texas. The witnesses necessary to establish both the existence of the contractual relationship and the details of the underlying debt are all located in Texas. The only witness associated with this dispute is Plaintiff, and only because of the fortuity that he chose to move to Florida years after the allegedly improper debt report was made. He should not be allowed to dictate the forum by choosing to relocate. Further, Texas has an interest in securing resolution of this case. Texas law controls the underlying lease that produced the financial obligation at issue. TTI is a

Texas corporation, and the original creditor is in Texas. Moreover, Plaintiff was a Texas resident at the time of the incurrence of the debt and breach of the underlying contract. Furthermore, there is no indication that courts in Texas are incapable of providing effective relief to Plaintiff.

A balancing of all these factors demonstrates that the exercise of personal jurisdiction over TTI is neither fair nor reasonable. Plaintiff has not met his burden of establishing that TTI purposefully invoked the benefits and protections of Florida law in connection with forum-related activities that gave rise to Plaintiff's claims. He cannot meet this burden. Assumption of jurisdiction would be unreasonable.

## IV.     CONCLUSION

The Florida long-arm statute does not provide a sufficient basis for jurisdiction over TTI. Even if it did, TTI has had no minimum contacts with Florida. Furthermore, the Court's assumption of jurisdiction over TTI would offend traditional notions of fair play and substantial justice and would be inconsistent with due process of law. For these reasons, TTI asks the Court to dismiss all of Plaintiff's claims.

WHEREFORE, PREMISES CONSIDERED, TTI respectfully prays that this Court dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2), Plaintiff take nothing herein, that TTI be dismissed with their costs, and all other and further relief, at law or in equity, to which TTI may be justly entitled.

## Certification of Compliance with Local Rule 7.1(a)(3)

The undersigned hereby certifies that he has conferred with Plaintiff's counsel with respect to the relief requested herein and has been informed that Plaintiff opposes such relief.

                                      Respectfully submitted,

                                      /s/ Charles J. McHale
                                      **CHARLES J. MCHALE, ESQ.**
                                      Florida Bar No.: 0026555
                                      **GOLDEN SCAZ GAGAIN, PLLC**
                                      1135 Marbella Plaza Drive
                                      Tampa, Florida 33619
                                      Phone: (813) 251-5500
                                      Fax: (813) 251-3675
                                      cmcahel@gsgfirm.com
                                      Counsel for Defendant